607 A.2d 839

**COMMONWEALTH of Pennsylvania**

**v.**

**502–504 GORDON STREET, IN the NINTH WARD OF the CITY OF ALLENTOWN, COUNTY OF LEHIGH, Commonwealth of Pennsylvania as Described with Particularity in Deed Book Volume Number 366, Page 342, Recorder of Deeds Office, Lehigh County, and All Improvements, Appurtenances, Buildings, Structures, Furnishings, Equipment and All Items Personalty Found Therein.**

**Appeal of Mattia LONARDO and Marjorie J. Lonardo.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1991.

Decided April 15, 1992.

Reargument Denied June 24, 1992.

John P. Karoly, Jr., for appellants.

Maria L. Dantos, Asst. Dist. Atty., for appellee.

Before PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Appellants Mattia and Marjorie J. Lonardo, husband and wife, appeal from the July 20, 1989 order of the Court of Common Pleas of Lehigh County forfeiting to the Commonwealth property owned by Appellants at 502–504 Gordon Street in the City of Allentown together with all furnishings, equipment and items of personalty found therein, because the bar/restaurant operated on the premises was used or intended to be used to facilitate violations of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act).[1] This Court is called upon in this appeal to construe the "innocent owner" defense set forth in 42 Pa.C.S. §§ 6801–6802, commonly known as the Controlled Substance Forfeiture Act (Forfeiture Act). The issues to be decided are whether the Commonwealth met its burden to establish that the seized property was used or intended to be used to facilitate violations of the Controlled Substance Act and, if so, whether Appellants met their burden to establish that the property was unlawfully used by persons other than Appellants without their knowledge or consent.

[1]. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101—780–144.

I

The subject property, consisting of the bar/restaurant known as "Shorty's Cafe" on the first floor and an apartment upstairs, is located in a drug-infested area in the Allentown center city. Since purchase of the property, Mr. Lonardo operated Shorty's Cafe and Mrs. Lonardo managed the related bookkeeping functions at home. On May 6, 1989, the Allentown Police Department seized the property pursuant to a seizure warrant and entry writ obtained as result of numerous drug-related activities and arrests made at and in the vicinity of Shorty's Cafe during the five month period from December 2, 1988 to May 6, 1989. Appellants were not charged with any violations of the Controlled Substance Act stemming from the activities occurring during that period or at any other time. On May 12, 1989, the Commonwealth filed its petition for forfeiture with the trial court pursuant to 42 Pa.C.S. § 6802.

At hearings before the trial court, the Commonwealth presented the testimony of twenty-four police officers who described seventeen specific violations of the Controlled Substance Act which resulted in arrests of twenty-four individuals and confiscation of cocaine with a street value of $2,160. Some arrests were the result of drug purchases conducted by undercover police officers. During the numerous raids at Shorty's Cafe, the police uncovered drugs concealed on patrons following pat-down searches. The arrest of one individual for selling drugs was the result of Mr. Lonardo's report to the police, and in another instance, one individual found to possess drugs was identified by Mr. Lonardo. Upon searching Appellants' property following the seizure, the police observed a number of plastic bags on the floor of the bar, a burned tablespoon in the kitchen, a mirror, and a woman's clothing with drug residue. Appellants testified on their behalf and also presented testimony of other witnesses.

The trial court ordered that the entire property including the bar/restaurant and apartment and all contents including the liquor license be forfeited to the Commonwealth, con-

cluding that the premises were used or intended to be used to facilitate violations of the Controlled Substance Act and that Appellants' lack of knowledge of drug-related activities was not reasonably disclaimed.[2]

## II

The Commonwealth sought forfeiture of Appellants' property pursuant to the following provision of the Forfeiture Act:

**§ 6801. Loss of property rights to Commonwealth**

**(a) Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

. . . .

(6)(i) All of the following:

. . . .

(C) Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, and including any right, title and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

(ii) No property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by the owner to have been committed or omitted without the knowledge or consent of that owner. . . .

**2.** Claimants filed an appeal initially with the Superior Court which transferred the case to this Court on March 27, 1991. *See Commonwealth v. 502–504 Gordon Street,* 405 Pa.Superior Ct. 465, 592 A.2d 756 (1991).

42 Pa.C.S. § 6801(a)(6)(i)(C), (ii).[3]

■ Section 6801(a)(6)(i)(C), (ii) was intentionally modeled after Section 511(a)(7) of the Comprehensive Drug Abuse Prevention and Control Act (Federal Drug Control Act), 21 U.S.C. § 881(a)(7), which made real property subject to forfeiture.[4] Pa. Legislative Journal–House, June 14, 1988, p. 1143. To combat drug problems facing this nation, the use of forfeiture laws by federal and state governments has gained growing popularity. *See* John Brew, *State & Federal Forfeiture of Property Involved In Drug Actions,* 92 Dickinson L.Rev. 461 (1988), for a list of civil forfeiture laws enacted throughout the United States and its territories. Despite growing popularity as a means to battle against drug traffic, forfeitures are not favored in the law and statutes authorizing forfeiture are to be strictly con-

3. The Controlled Substance Act, enacted in 1972, contained the forfeiture provisions at 35 P.S. §§ 780–128, 780–129. Real property was first made subject to forfeiture by the 1986 amendment to the Act. 35 P.S. § 780–128(a)(6)(i) (Purdon Supp.1986). Thereafter, in 1988, the forfeiture provisions of the Act were repealed and re-enacted at 42 Pa.C.S. §§ 6801–6802. Prior to 1988, property could be forfeited even if its owner had no knowledge nor consented to the unlawful use of the property by another person. *Commonwealth v. One 1988 Ford Coupe,* 393 Pa.Superior Ct. 320, 574 A.2d 631 (1990), *appeal denied,* 527 Pa. 631, 633, 592 A.2d 1299, 1301 (1991).

4. 21 U.S.C. § 881(a)(7) provides:

   **§ 881. Forfeitures**
   **(a) Property subject**
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   . . . .
   (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
   This section is substantially the same as Section 6801(a)(6)(i)(C), (ii) except that it subjects real property to forfeiture only when it is used or intended to be used to facilitate unlawful drug activities punishable by more than one year's imprisonment.

strued. *Commonwealth v. One 1988 Ford Coupe,* 393 Pa.Superior Ct. 320, 574 A.2d 631 (1990), *appeal denied,* 527 Pa. 631, 633, 592 A.2d 1299, 1301 (1991).

[2, 3] Forfeiture proceedings in Pennsylvania, while quasi-criminal in nature, are civil in form. 42 Pa.C.S. § 6802(a); *Commonwealth v. One 1983 Toyota Corolla,* 134 Pa.Commonwealth Ct. 325, 578 A.2d 90 (1990). Moreover, there need be no underlying conviction of a crime to support forfeiture of a person's property. *Commonwealth v. Giffin,* 407 Pa.Superior Ct. 15, 595 A.2d 101 (1991); *Commonwealth v. One 1974 Chevrolet Box–Type Truck,* 126 Pa.Commonwealth Ct. 173, 559 A.2d 76 (1989). In a forfeiture proceeding, the Commonwealth need only prove by a preponderance of the evidence that the property was used to facilitate a violation of the Controlled Substance Act. *Commonwealth v. One 1988 Suzuki Samurai,* 139 Pa.Commonwealth Ct. 68, 589 A.2d 770 (1991).

■ Appellants first contend that the Commonwealth failed to meet its burden to establish that their property was used or intended to be used to "facilitate" any violation of the Controlled Substance Act. In interpreting the term "facilitate," Pennsylvania courts require that the Commonwealth show a sufficient or substantial nexus between the property and the prohibited activity "to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person." *Commonwealth v. One 1985 Dark Blue Mercedes Benz Car,* 391 Pa.Superior Ct. 507, 513, 571 A.2d 482, 485, *appeal denied,* 526 Pa. 654, 586 A.2d 922 (1990); *see also In re King Properties,* 145 Pa.Commonwealth Ct. 139, 602 A.2d 486 (1992). Testimony concerning the arrests made at Shorty's Cafe, specific instances of unlawful drug activities, and physical evidence of drug-related materials on the premises support the finding that a substantial nexus existed between the subject property and those unlawful activities. Appellants' contention that the Commonwealth failed to establish that the property was used to facilitate viola-

tions of the Controlled Substance Act must therefore be rejected.

## III

Where the Commonwealth meets its burden to establish that property was unlawfully used, the burden of proof shifts to the property owner to establish the innocent owner defense to avoid forfeiture pursuant to 42 Pa.C.S. § 6802(j) which provides:

§ **6802. Procedure with respect to seized property subject to liens and rights of lienholders.**

. . . .

(j) **Owner's burden of proof.**—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

There is no dispute that Appellants were the owners of the property, having lawfully acquired it in 1986 as tenants by the entireties. Since they were not charged with any violation of the Controlled Substance Act, the only question concerning Appellants' innocent owner defense is whether they met their burden to establish that the unlawful use or possession of the subject property by others was without Appellants' knowledge or consent which must be reasonable under the circumstances. 42 Pa.C.S. § 6802(j)(3).

Appellants contend that Mr. Lonardo was aware of drug dealings or possession by patrons on only two occasions and that he acted properly by reporting them to the police. Concomitantly, they contend that an operator of a business with many invitees cannot be charged with knowledge of unlawful possession or sale of drugs concealed on their persons because business operators are not legally authorized to conduct body searches of patrons. Also, Appellants assert that they took all reasonable steps to prevent the use of their property for unlawful purposes. To the contrary, however, the Commonwealth argues that the subject property must be forfeited because the bar/restaurant provided the setting, opportunity and means for unlawful drug activities with Appellants' knowledge.

To address the parties' contention, this Court must first determine whether Appellants can show innocent ownership by proving that the unlawful use of property by others occurred either without their knowledge "or" consent, or whether they must prove lack of both knowledge "and" consent. The innocent owner defense has not been defined by Pennsylvania courts. Further, examination of the sparse legislative history does not reveal the legislative intent concerning the words "without knowledge or consent" except that the Forfeiture Act was intentionally modeled after its federal counterpart. Therefore, decisions of federal courts interpreting provisions of federal forfeiture legislation may be considered as guidance and persuasive authority in resolving this question. *One 1988 Suzuki Samurai.*

### IV

In *United States v. Certain Real Property & Premises known as 171-02 Liberty Avenue,* 710 F.Supp. 46 (E.D.N.Y.1989), the issue was raised for the first time as to whether a property owner can assert the innocent owner defense under 21 U.S.C. § 881(a)(7) because of a lack of consent even where the owner of the property, located in a high-drug trafficking area, admitted that the property was

being used to sell crack. The government argued that under the statute, the owner's knowledge alone was sufficient to defeat the innocent owner defense. The owner responded that to avoid forfeiture, he could show lack of either knowledge or consent. The court concluded that since each word in the statute must be given its independent and ordinary meaning, even if an owner has knowledge of the illegal use of his or her property, he may nonetheless successfully assert the innocent owner defense by showing a lack of consent.

Thereafter, the United States Court of Appeals for the Third Circuit was confronted with the same issue in *United States v. Parcel of Real Property known as 6109 Grubb Road*, 886 F.2d 618 (3rd Cir.1989), *reh'g denied*, 890 F.2d 659 (1989). In *6109 Grubb Road*, the government argued that if the owner fails to show lack of knowledge by a preponderance of the evidence, that in and of itself is sufficient to subject the property to forfeiture. The Court rejected this contention by adopting the *Liberty Avenue* interpretation of the language "without knowledge or consent" and concluded that the owner can show innocent ownership by proving by a preponderance of the evidence that the illegal use of the property occurred either without her knowledge or without her consent. *Accord. United States v. 141st Street Corp.*, 911 F.2d 870 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991); *United States v. Real Property known as 19026 Oakmont South Drive*, 715 F.Supp. 233 (N.D.Ind.1989).

In *141st Street Corp.*, the Court of Appeals for the Second Circuit, while noting that the disjunctive "or" suggests that a claimant can succeed by showing either lack of knowledge or lack of consent, observed that inclusion of the word "without" before "knowledge or consent" might also be interpreted to mean that an innocent owner must show lack of both knowledge and consent. The Court stated however that:

> Consent is 'compliance or approval esp[ecially] of what is done or proposed by another.' Webster's Third New

International Dictionary 482 (1971). In order to comply with or approve of something, it is only common sense that one must have knowledge of it. Thus, in order to consent to drug activity, one must know of it. If we were to construe section 881(a)(7) to mean that a claimant's knowledge alone precludes the innocent owner defense (i.e., that a claimant must disprove both knowledge and consent), then 'consent' as used in the statute would be totally unnecessary. In other words, the factfinder would never reach the issue of consent once it concluded that the claimant had knowledge. Similarly, under this construction it would be necessary to determine whether the claimant consented only if the factfinder first concluded that the claimant did not have knowledge of the drug activity, a result that cannot be squared with the ordinary meaning of the word 'consent.'

Congress intended forfeiture to be a powerful weapon in the war on drugs.... This stated purpose has influenced some courts to require a claimant to disprove both knowledge and consent to avoid forfeiture.... The inclusion of an express defense in the statute indicates that Congress had no desire to see innocent owners lose their property.... Requiring a claimant to disprove both knowledge and consent ignores Congress' desire to preserve the property of innocent owners and, as indicated, renders the phrase 'or consent' superfluous, a result that should be avoided.

*Id.* at 878 (citations omitted).

Applying rules of statutory construction to the matter *sub judice,* this Court must similarly hold that to require Appellants to disprove both knowledge and consent ignores the legislative intent to preserve the property of innocent owners used to facilitate violations of the Controlled Substance Act. The legislature is presumed to have intended to avoid surplusage in words, sentences and provisions contained in statutes. *Habecker v. Nationwide Ins. Co.,* 299 Pa.Superior Ct. 463, 445 A.2d 1222 (1982). Courts must therefore construe a statute, if possible, so as to give effect

to every word. *Id.* Thus, to interpret the term "knowledge or consent" as the Commonwealth advocates or as the trial court held would render the phrase "or consent" mere surplusage because once the trial court finds knowledge of the illegal activities, the inquiry ends. *6109 Grubb Road.*

The Pennsylvania legislature struck a balance between stronger forfeiture provisions and prevention of harsh results to an innocent owner by providing the innocent owner defense, and unnecessarily restricting an owner's ability to prove the defense would defeat a fundamental component of the legislation. *Commonwealth v. Crosby*, 390 Pa.Superior Ct. 140, 568 A.2d 233 (1990); Pa. Legislative Journal–Senate, April 18, 1988, p. 2078. This Court therefore concludes that the innocent owner defense can be established by proving by a preponderance of the evidence either a lack of knowledge or a lack of consent. Here, Appellants possessed knowledge about unlawful activities occurring at Shorty's Cafe as there were numerous police raids, and Mr. Lonardo called the police several times to report on-going drug activities. Testimony also showed that Mr. Lonardo's family was threatened and he was injured because he did not acquiesce in the drug activities at Shorty's Cafe. Nevertheless, despite this knowledge, Appellants may prevail by proving their lack of consent to the illegal activities occurring on their property.

## V

Courts have defined consent to include evidence which establishes that an owner has done all that could reasonably be expected of that person to prevent the illegal use of the owner's property. In *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the United States Supreme Court upheld the forfeiture of a yacht on which marijuana was discovered although the owner was neither involved in nor aware of the illegal activity. The Court rejected the owner's argument that the Puerto Rican forfeiture statute was unconstitutional because it authorized the taking of an innocent

party's property without just compensation. However, the Court in dictum stated that forfeiture of an innocent owner's property might be unconstitutional if the owner "had done all that reasonably could be expected to prevent the proscribed use of his property." *Id.* at 689, 94 S.Ct. at 2095. *See also 141st Street Corp.; 6109 Grubb Road; United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884 (11th Cir.1989).

■ This Court adopts the *Calero–Toledo* dictum to define consent. It balances the government's interest in using forfeiture as an effective weapon in the battle against drugs and the property interests of an innocent owner. *141st Street Corp.;* Lalit K. Loomba, *Note: The Innocent Owner Defense To Real Property Forfeiture Under the Comprehensive Crime Control Act of 1984,* 58 Fordham L.Rev. 471, 491 (1989). Under this standard, an owner must prove that he or she did all that could reasonably be expected to prevent the illegal use of the property once the owner becomes aware of that use. In adopting this standard, this Court is cognizant, however, that property owners are not required to take heroic, vigilante or police measures to rid their property of drug activity and that to encourage such a standard would produce a dangerous precedent. *United States v. All Right, Title & Interest in Property & Premises known as 710 Main Street,* 753 F.Supp. 121, 125 (S.D.N.Y.1990). Moreover, this interpretation comports with Section 6802(j)(3) of the Forfeiture Act which provides that "absence of knowledge or consent must be reasonable under the circumstances presented." Keeping this standard in mind, the evidence will be reviewed to determine whether Appellants consented to the illegal activities which occurred at Shorty's Cafe.[5]

5. *See 710 Main Street* where the federal district court dismissed the government's complaint seeking forfeiture of a bar and arcade located in a highly active drug trafficking area and ordered return of the seized property because the evidence showed that the owner took all reasonable steps to keep the illegal drug activities from the bar. The owner presented the following evidence to prove lack of his consent to the illegal activities: he fired two bartenders after they were arrested

Testimony disclosed that Mr. Lonardo made it known to his patrons that he would notify the police if he saw or suspected the possession of drugs at the establishment. On his own initiative, Mr. Lonardo reported illegal activities to the police at least seven times, and police officers admitted at hearing that at least two raids were initiated by Mr. Lonardo's reports. At times Mr. Lonardo called the police anonymously in fear of his life, instructed his employees to call the police whenever they saw patrons with drugs, and ordered patrons to leave the bar when they were observed with drugs. Also, he identified a suspect and cooperated with police searches at the raids, discussed drug and loitering problems with the police captain and followed his instruction by posting signs on all the windows. Mr. Lonardo received threats against himself and family and was injured when glass was thrown at him because he refused to acquiesce in drug activities at the cafe. He also sustained damages to the property due to his policy toward patrons dealing or possessing drugs. This undisputed evidence amply supports a conclusion that Appellants did all that could reasonably be expected of them to prevent the illegal use of their property once they became aware of drug activities occurring within the cafe. That Mr. Lonardo was unsuccessful in eliminating the activity should not be held against Appellants in this forfeiture action. *710 Main Street.*

Thus, the evidence fails to demonstrate that Appellants consented to drug activities on their property within the meaning of Section 6802(j)(3) of the Forfeiture Act and therefore their innocent owner defense must prevail. Consequently, the trial court erred in forfeiting the subject property based solely upon Appellants' failure to show a

on drug-related charges; locked the restrooms to restrict access thereto; initiated a policy of allowing one person in the restroom at a time; placed warning signs; wrote a letter to the police asking for cooperation in ridding the property of drugs; and anonymously informed the police of the illegal activities.

lack of knowledge of illegal drug activity on their property.[6] The trial court's order forfeiting Appellants' property is reversed.

## ORDER

AND NOW, this 15th day of April, 1992, the order of the Court of Common Pleas of Lehigh County is hereby reversed.

---

**6.** Since the trial court's order is reversed for the reasons discussed in this opinion, Appellants' remaining arguments including their constitutional challenges will not be addressed.